**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **FRINGE INSURANCE BENEFITS, INC.,** | § | |
| | § | |
| **V.** | § | **A-13-CV-034-AWA** |
| | § | |
| **BENECO, INC. and J. ZANE SMITH.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the above-entitled cause of action.  The parties appeared for a bench trial and the Court heard testimony and evidence on May 21, 2014.  Pursuant to the Court's Order of May 22, 2014, (Dkt. No. 40), the parties filed post-trial briefing.  The last of all the Court-ordered briefing was received August 4, 2014.  Defendants Beneco, Inc., and J. Zane Smith (collectively "Defendants") also submitted a Sur-Reply Brief on August 7, 2014, which Plaintiff Fringe Insurance Benefits, Inc. ("FIBI"), opposed and sought to strike.  *See* Dkt. Nos. 47, 48.  Although Beneco did not seek leave to file the sur-reply, the Court permitted its filing, but allowed FIBI to file a Sur-Reply Brief to the extent it wished to do so.  *See* Dkt. No. 50.  Having considered the evidence and testimony and post-trial briefing, the Court enters the following Memorandum Opinion and Order.

## I.  FINDINGS OF FACT[1]

This case arises out of a dispute between competing providers of employee benefit plans. Fringe Insurance Benefits, Inc. ("FIBI") and Beneco, Inc. specialize in providing fringe-benefit services to government contractors who must comply with prevailing wage laws, such as the Davis-Bacon Act.  Beginning in June 2012, Beneco sent mass mailings and emails to various customers

---

[1]The Court sets out its findings and conclusions in narrative form.  To the extent that any finding of fact is more appropriately considered a conclusion of law, or vice verse, then such findings or conclusions are deemed as such.

that FIBI claims violated the Lanham Act prohibiting false advertising.  The Court finds that Beneco

made the following statements:

- That Beneco's plan was a "Department of Labor approved plan" Plaintiff's Exhibits 14, 33, or "*the* Department of Labor approved plan." Plaintiff's Exhibit 17 (emphasis added);

- That the plan was "endorsed by various construction associations, including numerous ABC Chapters, Independent Electrical Contractors Associations, American Subcontractors Association and others." Plaintiff's Exhibit 14, *See also* Plaintiff's Exhibit 22 (containing substantially similar language);

- Beneco sent out flyers that included the logos of the Associated Builders and Contractors and Independent Electrical Contractors trade associations, implying that the plan was endorsed by these entities.  Plaintiff's Exhibit 17;

- That Beneco historically finds that its plan is "typically 50% less in cost than [FIBI's] plan." Plaintiff's Exhibits 12-14;

- That Beneco customer Elting Northwest, Inc.  "would save an estimated $1,523 if [it] were to remain with Beneco" instead of switching to FIBI.  Plaintiff's Exhibit 2.

- That specific prospective customers would save "$12,609," "$6,348," "10,546," or "1,008."  Defendant's Exhibits 29, 30, 32, 33, respectively.

- That FIBI's "internal fees and expenses are 3 times higher than [Beneco's], which they will hide from you." Plaintiff's Exhibit 4.

- That "FIBI has been under investigation by the Federal [Department of Labor]." Plaintiff's Exhibit 5.

- Implied that FIBI's plans do not have "an independent third party trustee," instead "naming you or an individual of your company as a discretionary trustee," such that "you are forced to take on the fiduciary liability for the investment selection." Plaintiff's Exhibit 2.

FIBI also alleges that Beneco violated FIBI copyrights.  On May 1, 2009, the Independent

Electrical Contractors published "Management Methods: Avoiding the Potential Prevailing Wage

Pitfalls in Federal Contracting" in its national trade publication.  Plaintiff's Exhibit 39. The article

was written by FIBI, who registered its copyright to it.  Plaintiff's Exhibits 38.  In December 2010,

an IEC chapter newsletter published a substantially similar article entitled "ARRA Offers Great Opportunity & Potential Challenges for Electrical Contractors," for which FIBI also filed an application to register a copyright.  Plaintiff's Exhibits 40, 42, 43.  The Court finds that FIBI has a valid copyright to these articles.

Over several months in 2012, Defendant Zane Smith sent to hundreds of potential Beneco customers a stock email that included an article entitled "Expanded Opportunity & Potential Challenges for Contractors doing Prevailing Wage Projects." Plaintiff's Exhibit 33.  In early 2013, Smith published "Become a 'Bona Fide' Contractor on Prevailing Wage Projects" in both the print and online versions of *Construction Executive* magazine.  Plaintiff's Exhibits 30, 31.  In 2014, Smith sent another article, entitled "Davis Bacon Dilemma: Expanded Opportunity for Contractors doing Prevailing Wage Project," to over 200 prospective clients.  Plaintiff's Exhibit 41, Tr. at 293.[2]  Each article contains large amounts of language lifted directly from FIBI's copyrighted 2010 article.  At trial, Smith admitted he had directly copied FIBI's article.  Tr. at 282, 289-290.

## II.  CONCLUSIONS OF LAW

As an initial matter, the Court addresses Defendants' contention that the Court need not even reach the merits of FIBI's claims.  Dkt. No. 45 at 2-3.  In their post-trial briefing Defendants contend for the first time that regardless of whether FIBI has demonstrated that wrongful acts have been committed, FIBI failed to show that the entity named as a defendant—Beneco, Inc.—was responsible for any of those wrongful actions.  Indeed, they argue that showing Beneco was responsible is impossible, because Beneco, Inc. is a non-functioning shell entity.  In response, FIBI argues that (1) Defendants waived any "improper party" defense, and (2) the evidence demonstrates that even

---

[2]The transcript of the trial is filed as Tr., and is cited throughout this opinion as "Tr. at___."

Defendants refer to all of their various entities as "Beneco" in their marketing materials.  Dkt. No. 46 at 1–2.  Defendants couch their argument as a "no-evidence point" because to raise it as a challenge to the parties at this late date would be untimely.  Ultimately, Defendants have failed to convince the Court that they are not raising a challenge that Beneco, Inc. is an improper party. Because Defendants failed to raise this issue as an affirmative defense, *see* Dkt. No. 15, they have waived this contention.

Defendants' attempt to characterize its argument as merely a "no-evidence point" is unconvincing for several reasons.  Defendants' strategy in this case appears to have been to imply, but never explicitly assert, that FIBI has sued the incorrect "Beneco" entity.  As will be further explained below, the evidence before the Court clearly demonstrates that wrongful acts were committed by one or more entities referred to and known by all as "Beneco."  Indeed, Defendants concede that the actions upon which this suit is based were performed by the "functioning Beneco entities."  Dkt. No. 45 at 1, n.1.  Additionally, Defendants highlight that they "do not concede that Beneco, [which Defendants define for the first time to mean the functioning Beneco entities], has been properly sued or served in this action."  *Id.*  By stating that FIBI has not properly sued the "Beneco" entities that committed the wrongful actions, Defendants are basically arguing that FIBI has sued the incorrect party in this case.  But Defendants have waived this contention, as they did not raise the issue as an affirmative defense.  *See Jordan v. City of Baton Rouge*, 192 F.3d 125 at *3 (5th Cir. 1999); *see also Aguilar v. Arthritis Osteoporosis Ctr.*, No. M-03-243, 2006 WL 2478476 at *5 n.8 (S.D. Tex. Aug. 26, 2006) ("Arguments raised for the first time in post-trial briefing are waived.").

Furthermore, although Defendants might believe that the evidence clearly demonstrates that FIBI should have known it was suing the incorrect party, the Court notes that the evidence presents,

at best, an unclear picture.  During trial, Rhett Smith testified that Defendants do not distinguish between the various "Beneco" entities in their marketing information.  Tr. 278–279.  Additionally, while there was testimony regarding the structure of "Beneco," Zane Smith unambiguously stated that there were no other "Beneco" entities during his deposition.  Dkt. No. 45, Exhibit A ("Q: Okay. Are there other Beneco entities?  A: No.").  Based on Defendants own representations, it is not at all clear that FIBI has in fact sued the wrong entity.  Thus, to the extent that one might construe Beneco's argument as something other than a waived objection that it is not the proper party, the argument fails factually as well.

**A.      FIBI's Claim of Lanham Act Violations**

In order to succeed on a claim of false advertising under the Lanham Act a plaintiff must show that: (1) a defendant made a false statement of fact about its product in a commercial advertisement; (2) the statement actually deceived or has a tendency to deceive a substantial segment of its audience; (3) the deception is likely to influence the purchasing decision; (4) the defendant caused the false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result.  *Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 462 (5th Cir. 2001).

However, when statements "are shown to be literally false, the plaintiff need not introduce evidence on the issue of the impact the statements had on consumers . . . . In such a circumstance, the court will assume that the statements actually misled consumers."  *Id.* (internal quotation marks omitted).  In addition, when a plaintiff seeks only injunctive relief it need not prove a specific amount of actual damages, only that it was "likely to be injured as a result of the violation of the Act."  *Schlotzsky's Ltd. v. Sterling Purchasing & Nat. Distrib. Co.*, 520 F.3d 393, 401 (5th Cir. 1999) (citing *Logan*, 263 F.3d at 463 and *King v. Ames*, 179 F.3d 370, 373-374 (5th Cir. 1999)).

5

FIBI focuses its Lanham Act claim on nine statements by Defendants, each of which is discussed individually in the following subsections.  From the evidence at trial, the Court concludes that each of the statements is "commercial advertising" that Beneco caused to enter interstate commerce.  At issue is whether or not each statement was "literally false" or deceptive under the Lanham Act.  That issue is discussed as to each statement in what follows.

1.    **Beneco's Department of Labor "Approval" and American Subcontractors Association/Associated Builders and Contractors "Endorsement" Claims**

Courts have repeatedly held that companies made "literally false" statements when they claimed official approval or endorsements they had not received. *See, e.g., Sw. Recreational Indus., Inc. v. FieldTurf, Inc.*, 01-50073, 2002 WL 32783971, at *3-4 (5th Cir. Aug. 13, 2002) (finding "literally false" statements that artificial turf company's product was "approved" by FIFA); *N. Am. Med. Corp. v. Axiom Worldwide, Inc*., 522 F.3d 1211, 1225 (11th Cir. 2008) (affirming finding that an advertisement stating a product was "FDA approved" was "literally false").  Beneco's statements that its plan was Department of Labor approved were literally false.  The plan was not approved or endorsed by the Department of Labor in any way.  Tr. at 185.  Beneco's statements that its plan was endorsed by the American Subcontractors Association and Associated Builders and Contractors trade associations were also literally false.  While Beneco may be endorsed by particular chapters of these associations, they are not endorsed by the national groups. Tr. at 261 (endorsed by local chapters), 189 (not endorsed by American Subcontractors Association), 186 (not endorsed by Associated Builders and Contractors).  Indeed, both organizations sent letters to Beneco demanding that it stop using its logo in advertisements.  Tr. at 186 (Associated Builders and Contractors), Plaintiff's Exhibit 21 (American Subcontractors Association). Such literally false statements misled consumers

6

regarding Beneco's product, and harmed FIBI in the process.  FIBI has produced sufficient evidence in support of these claims, and Beneco's conduct violated the Lanham Act.

### 2.    Beneco's Claim that its Plan Costs 50% Less than FIBI

FIBI also contests Beneco's claims that "we historically find that our . . . plan is typically 50% less in cost than [FIBI's] plan." Plaintiff's Exhibits 12-14.  Courts have held that cost comparisons that are "literally false" violate the Lanham Act.  *See, e.g., Rent-A-Ctr. W., Inc. v. Aaron Rents, Inc.*, CIV.A.3:03-CV-1595-K, 2004 WL 813225, at *2, *6 (N.D. Tex. Apr. 14, 2004) (enjoining advertisement that inflated plaintiff's alleged fees); *Garden Way, Inc. v. Home Depot, Inc.*, 94 F. Supp. 2d 276, 278 (N.D.N.Y. 2000) (noting that "if Defendants wish to secure the undoubted advantage of numerical comparisons, then they should get them right").

FIBI argued that it is "literally false" to claim that Beneco's plan is 50% less expensive.  Had Beneco made such a claim, it probably would have violated the Lanham Act.  As discussed below, FIBI showed at trial that several specific cost comparisons Beneco sent to potential customers were "literally false."  Morever, Beneco never identified the analysis or study that caused it to "historically find" such savings.  Rhett Smith, executive vice president at Beneco was asked at trial whether he could point to "any spreadsheets, any documents that you have" that support Beneco's statement. Tr. at 276. Smith said, "Yeah," but then changed the subject.  *Id*.  Plaintiff's counsel did not press the issue.  Nonetheless, to demonstrate that Beneco did not *historically find* such savings, and therefore that the statement was "literally false" under the Lanham Act, FIBI would have had to submit a more thorough comparison of the two products or evidence that Beneco had never done *any* analysis justifying its claim.

Still, Beneco's claim is clearly misleading.  When a plaintiff seeks injunctive relief for a statement that is not "literally false" but merely misleading, she must prove "that the advertisement

tends to deceive consumers." *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 497 (5th Cir. 2000).   To do so, she must "show that at least some consumers were confused by the advertisements." *Id.* at 498.   FIBI did not produce any evidence that this statement confused any particular customers.   The only evidence of consumer confusion it produced pertained to other statements FIBI has challenged.   Plaintiff's Exhibits 1, 8.   As FIBI has not shown that any customers were confused by Beneco's statement that "we historically find that our . . . plan is typically 50% less in cost than [FIBI's] plan," it has not met its burden of proof.   Accordingly, these statements did not violate the Lanham Act.[3]

### 3.      Beneco's Specific Cost Comparisons

FIBI next protests the specific cost comparisons Beneco made in letters to Elting Northwest, Inc., a customer that had elected to switch from Beneco to FIBI.   Plaintiff's Exhibit 2.   Beneco stated that Elting would save "an estimated $1,523" if it stayed with Beneco.   *Id*.   That estimate was based on an attached spreadsheet in which Beneco made several errors.   Among them: misplacing a decimal point, thereby increasing FIBI's cost by over $1,900; using an outdated service fee, inflating FIBI's cost by $1,541; and misstating a record keeping fee by $1/per participant, thereby inflating the  cost by $108.   Tr. at 200-201; 203-204; 201.   As a result of these mistakes, Beneco provided Elting with an estimate that was "literally false," As noted, *supra.*, "literally false" cost comparisons violate the Lanham Act.

FIBI also claims that Beneco sent specific customers inaccurate cost savings estimates. According to spreadsheets produced by Beneco and sent to certain customers, each could save "$12,609," "$6,348," "10,546," or "1,008" by switching to Beneco.   Defendant's Exhibits 29, 30,

---

[3]A word of caution: Demonstrating the literal falsity of a statement under the Lanham Act is a heavy burden.  A party's failure to meet that burden does not mean that the statement was true.

32, 33, respectively.  Each estimate is incorrect.  In Defendant's Exhibit 29, Beneco misstated FIBI's

insurance company expenses, pegging them at 1.23% instead of .68%, thereby inflating FIBI's costs

by $3,650.  Tr. at 206-210.  It made the same mistake in Defendant's Exhibits 30 and 32, inflating

FIBI's costs by $2,559 and $3,487, respectively.  *Id*. at 211-12, 213-15.  In Defendant's Exhibit 33,

Beneco stated FIBI's administrative fees were $1,200 when they are actually $506.  *Id*. at 215-217.

Beneco even made basic arithmetic errors, miscalculating the sum of its own total costs by $2,326.

*Id*. at 212.  It is clear that these estimates, rife with errors as they are, were "literally false"

statements that violated the Lanham Act.

### 4.    Beneco's Claims about FIBI's Hidden Fees and Being Under Investigation

On October 24, 2012, Zane Smith, on behalf of Beneco, sent an email to Douglas Philippa,

manager at ESI Electric, LLC, a contractor that had chosen FIBI's plan over Beneco.  Smith stated

that FIBI's "internal fees and expenses are 3 times higher" than Beneco's, and that FIBI will hide

its fees from ESI.  Plaintiff's Exhibit 4.  In a second email, he stated that "FIBI has been under

investigation by the Federal DoL." Plaintiff's Exhibit 5.  FIBI contends that each of these statements

were "literally false" and violations of the Lanham Act.

FIBI had the burden to show that Smith's statement that FIBI's "internal fees and expenses

are 3 times higher" than Beneco's is "literally false."  It has not met that burden.  The only evidence

FIBI cites in its post-trial brief is its own executive vice president's testimony that he had never seen

any documentation that supported the statement.  FIBI did spend considerable time at trial

demonstrating errors in an "apples-to-apples" analysis done by a third party financial advisor,

Bluestone Financial Advisors.  *See*, Tr. at 219, Defendant's Exhibit 39.  That analysis compared FIBI

and Beneco's plans as they would be applied to a particular potential customer.  It showed that

FIBI's fees and expenses were four times higher that Beneco's.  FIBI effectively pointed out the

errors in those calculations, thereby impeaching Beneco's only evidence in support of its statement. At best, though, FIBI has proven that one third party financial advisor mistakenly advised his client regarding the difference in FIBI and Beneco's fees. FIBI did not show that Beneco's statement that FIBI has three times higher fees is wrong in every case, or even a majority of cases.[4] As with Beneco's claim of 50% lower costs, in order to show that the statement was "literally false" FIBI would have had to have either submitted a thorough comparison of the two products across several customers or evidence that Beneco had never done any analysis justifying its claim.

Finally, even if the statement is merely misleading, FIBI failed to prove that it was "likely to be injured as a result of the violation of the Act." *Schlotzsky's Ltd., supra.*, 520 F.3d at 401. Indeed, there was no actual harm here, as the statement was made in an email to a customer who had already chosen to leave Beneco for FIBI. It is clear then that this statement did not violate the Lanham Act.

However, it is clear that Beneco's statement that FIBI hides its fees from customers is "literally false." FIBI discloses all of its fees in its written agreements with customers and in its marketing materials. *See, e.g.,* Defendant's Exhibit 22, Plaintiff's Exhibit 46. Beneco's statements that FIBI hides its fees from customers violated the Lanham Act.

Beneco's statement that FIBI has been under investigation by the Department of Labor is neither literally false nor misleading. FIBI itself has not been under Department of Labor investigation, but its affiliate, Plan Benefit Services, has been sued by the Department of Labor. Defendant's Exhibit 6. Plan Benefit Services and FIBI are affiliates that share common ownership, common control, and function together in the same market. *See*, Tr. at 74. The Department of Labor

---

[4]Indeed, the "apples-to-apples" analysis FIBI impeached could not have been the source of Smith's claim: Bluestone sent the analysis to its client *after* Smith's email to ESI Electric.

filed suit against Plan Benefit Services in January, 2011, alleging violations of the Employment Retirement Income Security Act of 1974.  Defendant's Exhibit 6.  The Department of Labor prevailed on that action: the court found that provisions of Plan Benefit Services' plans were void as against public policy, and the company was enjoined from continuing to include those provisions in its products.  Defendant's Exhibit 8. Thus, while the statement that "FIBI has been under investigation by the Federal DoL" may not be entirely accurate, it is not sufficiently misleading to trigger Lanham Act liability.  Moreover, FIBI has not proven that the statement actually deceived the customer to whom it was sent, nor that such a statement has a tendency to deceive a substantial segment of its audience.  Accordingly, the Court finds that this statement did not violate the Lanham Act.

 5.     **Beneco's Claims Regarding FIBI's Lack of Third-Party Trustee Protection**

Beneco stated that FIBI plans did not provide a third party trustee, thereby forcing customers to take on fiduciary liability.  Plaintiff's Exhibit 2.  This claim is also "literally false:" FIBI's plans include third party trustees and do not force customers to take on such liability.  Tr. at 38-39.  These statements violated the Lanham Act.

**B.     FIBI's Claim of Unfair Competition under Texas Law**

FIBI claims that Beneco's conduct also constituted unfair competition under Texas law.  To succeed on a claim for unfair competition a plaintiff must "show an illegal act by the defendant which interfered with the plaintiff's ability to conduct its business." *DP Wagner Mfg.  Inc.  V.  Pro Patch Sys., Inc.,* 434 F.  Supp.  2d 445, 462 (S.D. Tex.  2006).  An "independent tort," such as a violation of the Lanham Act, satisfies the law's requirement.  *Id.* The Court finds that Beneco's violations of the Lanham Act constitute an independent tort for the purposes of Texas unfair

competition law. Accordingly, the Court finds that Beneco committed unfair competition under Texas law.

## C.     FIBI's Claim of Tortious Interference

FIBI brought a claim for tortious interference in its original complaint. Dkt. No. 1 at 7. However, it did not present any evidence in support of the claim, or make any arguments advancing the claim at trial. It made no mention of the claim in its post trial briefing. It is not clear to the Court whether FIBI still contends that Beneco has interfered with its business relationships. Regardless, FIBI has not met its burden on this point. To the extent that FIBI is still pursuing that claim, because it failed to offer proof of the claim at trial, or to brief it in its post-trial briefs, it has abandoned the claim.

## D.     FIBI's Claim of Copyright Infringement

To succeed on a copyright infringement claim, a plaintiff must prove that: (1) he owns a valid copyright in the applicable work, and (2) the defendant copied constituent elements of the plaintiff's work that are original. *Positive Black Talk Inc. v. Cash Money Records, Inc*., 394 F.3d 357, 367 (5th Cir. 2004). To satisfy the first element of the test a plaintiff may produce a valid copyright certificate of registration or, absent approval, the application, fee and deposit submitted for registration. *See R. Ready Prods., Inc. v. Cantrell*, 85 F. Supp. 2d 672, 682 (S.D. Tex. 2000); *Lakedreams v. Taylor*, 932 F.2d 1103, 1108 (5th Cir. 1991). To satisfy the second element, "a plaintiff must prove: (1) factual copying and (2) substantial similarity." *Positive Black Talk*, 394 F.3d 357, 367. To prove factual copying, a plaintiff must show that "(1) the defendant had access to the copyrighted work before creation of the infringing work, and (2) the works contain similarities that are probative of copying." *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007). Substantial similarity is proven when the two works are "sufficiently alike that the copyright to the original work has been

infringed." *Id*.

As noted, *supra.*, FIBI has a copyright to the articles at issue.  As for copying, Smith admitted at trial that he had copied and reprinted the articles on behalf of Beneco.  Copying is admitted, and even if it were not, there can be little question, given the nearly identical nature of the two articles, and the undisputed evidence that FIBI is the author of the original text.  Accordingly, the Court finds that both Smith and Beneco violated FIBI's copyright in the article at issue.

### III.  REMEDIES

FIBI is not seeking an award of monetary damages, but instead asks only that the Court enter a permanent injunction against Smith and Beneco, enjoining them from committing Lanham Act violations in the future.

Injunctions are proper relief for violations of the Lanham Act.  15 U.S.C. § 1116 (a).  A plaintiff seeking a permanent injunction "must establish (1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest." *VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006).  As detailed *supra.*, FIBI has shown that Smith and Beneco violated the Lanham Act, thereby satisfying the first element of the test.

FIBI argues that irreparable harm is presumed if a statement is found to have been literally false.  Dkt.  No.  44 at 15.  This is not a correct reading of Fifth Circuit false advertising precedent, "which explicitly requires a plaintiff to prove irreparable injury '[i]n addition' to proving falsity." *Eastman Chem. Co. v. PlastiPure, Inc.*, 969 F. Supp. 2d 756, 767-68 (W.D. Tex. 2013) (citing *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1369, 1390 (5th Cir.  1996)).  To be sure, it is difficult to prove "irreparable injury" in a false advertising case.  *Id.*  (citing *PBM Prods., LLC v.  Mead Johnson*

& Co., 639 F.3d 111, 126-27 (4th Cir. 2011)).[5] Nonetheless, should Beneco continue to make such statements FIBI will be irreparably harmed. *See, e.g.,* Tr. at 28 (FIBI V.P. noting the small size of the benefit plan market and that "when information is provided that's incorrect in those small circles, it gets around pretty quickly and can be damaging."); at 64 (FIBI V.P. noting that many customers are small, "family-run" businesses easily influenced by false endorsements). That many of the statements were contained in emails sent directly to customers makes an injunction all the more appropriate: as FIBI correctly notes, such "difficult-to-monitor channels" are the most likely source of future harm. *Eastman Chemical Co., supra.*, at 768.

The equities also support an injunction in this case: requiring Beneco to refrain from making false statements and post a copy of this order serves the public interest and causes no direct harm to Beneco. Accordingly, the Court **enjoins** Defendants, their employees, agents, or affiliates from distributing commercial material that:

- states or suggests that Beneco or its products are approved by the Department of Labor;

- states or suggests that Beneco or its products are endorsed by the American Subcontractors Association or the national Associated Builders and Contractors organization, unless they have actually received an endorsement from either national organization;

- includes inaccurate and/or incomplete customer-specific comparisons between the costs, fees, or expenses of FIBI and Beneco products;

- states or suggests that FIBI hides its costs, fees, or expenses;

- states or suggests that FIBI does not have a third party independent trustee or that FIBI's plan forces customers to take on fiduciary liability for investment selections;

---

[5] Generally, it is unwise to argue one point, supported only by out-of-circuit law, and then in the very next paragraph cite a case, *Eastman Chemical Co.,* that explicitly rejected the holdings of the out-of-circuit courts as "plainly inconsistent" with Fifth Circuit precedent. 969 F. Supp. 2d at 767-68. But this is what FIBI did. Dkt. No. 44 at 15.

In addition, the Court **orders** that Beneco post a copy of this memorandum opinion and order, and a copy of the final judgment in this action, to its website.  It shall also place a link to the judgment on its corporate home page.  The link shall be no smaller than 12 point type and readily apparent to the site's visitors with no other accompanying commentary or explanatory statement.  Both the documents and the link shall remain in place for **30 days.**  Beneco **shall provide notice** to the Court when it publishes the documents and again at the completion of the period.

Beneco and J. Zane Smith also infringed FIBI's copyright.   "Irreparable harm is presumed when a copyright is infringed." *Entm't & Sports Programming Network, Inc. v. Edinburg Cmty. Hotel, Inc.,* 735 F. Supp. 1334, 1343 (S.D. Tex. 1986).  FIBI made considerable investment of time, talent and treasure in producing and distributing the articles to potential customers, all for naught if Beneco continues to reprint them under its own name. *See,* Tr.  157-59, 162-64.  The burden of an injunction against continued copying would be light on both Beneco and the public.  Accordingly, the Court **enjoins** Defendants and their employees, agents and affiliates from infringing FIBI's copyrights to publications, articles, literature or marketing material.

SIGNED this 11 day of February, 2015.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE